**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR/MG
F. #2025R00395

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 4, 2025

By ECF and E-Mail

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Kaleem Nurse
Criminal Docket No. 25-377 (KAM)

Dear Judge Scanlon:

The government respectfully submits this letter in support of its request for a permanent order of detention as to the defendant Kaleem Nurse, who was arrested earlier this morning.

As set forth below, Nurse sex trafficked women to work in prostitution at an open-air sex trafficking market along a stretch of Pennsylvania Avenue in Brooklyn, New York (the "Penn Track"), as well as in cities across the country. Given the nature of the crimes charged, there is a statutory presumption of detention, and the defendant poses a significant danger to the community and risk of flight if released on bail. Accordingly, the Court should detain the defendant pending trial.

## I. Background

### A. The Instant Charges

On December 3, 2025, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with ten counts: sex trafficking, in violation of 18 U.S.C. § 1591; eight counts of interstate prostitution, in violation of 18 U.S.C. § 2422(a); and promotion of prostitution, in violation of 18 U.S.C. § 1952(a)(3)(A). The sex trafficking count has a mandatory minimum sentence of 15 years' imprisonment and the potential for life imprisonment. The government estimates that the defendant faces a Guidelines range of 151 to 188 months' imprisonment.

B. Offense Conduct

Between January 2021 and June 2025, the defendant had numerous women working in prostitution for him on the Penn Track and other locations across the United States, and trafficked at least one of those women using force, fraud and coercion. Specifically, evidence obtained pursuant to the investigation reflects that the defendant regularly required his female victims to solicit customers on the Penn Track and other locations across the country, including Miami and Atlantic City, and to engage in commercial sex acts with those customers. The defendant collected the proceeds earned by these women after they engaged in commercial sex acts with customers, and he used violence and emotional manipulation to discipline and control them.

Law enforcement recovered messages sent by the defendant confirming his physical and verbal abuse of his female victims. For example, in January 2022, the defendant threatened to punish a female victim for drinking and falling asleep with a "trick" (i.e., a prostitution customer), messaging her in substance and in part, "I shulda put you in the hospital. Shulda did. Broke your teeth. Your mouth. Your jaw." The next day, the female victim complained that the defendant had in fact beat her up, messaging him: "I gotta walk with a black eye," and the defendant responded, "I admit mine and admit to what I do." After the female victim stated, "I'm hiding in the camera to talk to my own child today," the defendant responded, "Shit not even black punch yourself and make it blacker tf. Tf you caused that. . . . And you deserved way more." When she replied, "U beat the fuck outta me," the defendant told her to "take it accept it cus you deserved it tf."

In July 2022, the defendant knocked down the same female victim's front door after she complained that the defendant was using her apartment for other women to work in prostitution. The defendant threatened her: "bitch you lucky it wasn't your TEETH down ! ON MY LIFE." The landlord confirmed that he had to fix the front door that had been kicked in, and he provided a photograph of footprints on the broken door:



As another example, in April 2023, the defendant berated one of his female victims for not making enough money working in prostitution for him on the "blade" (i.e., the Penn Track):

> I put you on the blade WHEN YOU NEED TO MAKE SOME MONEY days and days and days no money Wtf is that ? When the last time I checked a decent trap from you ? Wytb ? I send you on missions about every lane about this Shit ! Like stop with these excuses you been out here DAYS I get here you telling me you have nothing yesterday it was 2000 on only fans and 300 in cash now it's Nothing idk wassup with you but Save the games for somebody else

In May 2023, the same female victim expressed to the defendant that she was "struggling to get at least 3 pops off a day for night shift," and the defendant responded, "hoes show action with money not paragraphs and paragraphs." And in June 2025, the defendant messaged the same female victim who had now left him, admitting that he hit her and threatening to harm her further if she did not return to working for him:

> So your fuck ass left because I slapped you this is what the fuck I'm talking about you come then you leave you need to fucking call me right now. You need to get in fucking contact with me. You know who the fuck this is this Consistent stop fucking playing with me before I take this shit somewhere you don't want to take it

On December 4, 2025, federal agents arrested the defendant at his residence in Brooklyn.

C. The Defendant's Criminal History

On November 5, 2019, the defendant was convicted of a second-degree felony in Miami-Dade, Florida for deriving support from the proceeds of prostitution. His conviction was related to an October 6, 2019 incident in which the defendant, who had been forcing a female victim to work in prostitution, pinned her to the floor and allowed another woman to punch her in the face. According to police reports, the defendant had also previously choked and slapped the female victim himself. The defendant received a sentence of five years' probation.

## II. The Bail Reform Act

Under the Bail Reform Act, federal courts "shall" order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of risk of dangerousness must be supported by clear and convincing evidence, and a finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

In cases like this one, charging an offense under 18 U.S.C. § 1591, "it shall be presumed," subject to rebuttal by the defendant, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(D). The presumption means that the Court must initially assume there is

"no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. The defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involved a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

In evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee."[1] United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

## III. Argument

Due to the charges filed against the defendant, there is a presumption that there are no conditions of release that would reasonably assure the defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3)(D). The defendant cannot rebut that presumption, regardless of any bail package that may be proposed, because the relevant considerations under the Bail Reform Act clearly support a finding of dangerousness and risk of flight.

First, the charged offenses are extremely serious. 18 U.S.C. § 3142(g)(1). The defendant trafficked at least one female victim for his own financial benefit. He berated and beat his victims—actions that were part of a pattern of regularly threatening women to control and extract more money from them. The first § 3142(g) factor therefore weighs strongly in favor of detention.

Moreover, the charged offenses carry significant penalties that give the defendant a strong incentive to flee. Specifically, the defendant faces a mandatory minimum sentence of 15

---

[1] The government may proceed by proffer in a detention hearing. United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

years' imprisonment and up to life imprisonment on the sex trafficking count. He also faces a Guidelines range of 151 to 188 months' imprisonment. These penalties give the defendant an overwhelming incentive to flee and to obstruct justice. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); Martir, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Second, the weight of the evidence against the defendant is strong. The government intends to prove the defendant's guilt at trial through, among other things, (1) witness testimony, (2) messages, photographs, videos and other materials recovered from cellular telephones, iCloud accounts and social media accounts of the defendant, his co-conspirators and his victims; (3) travel records; (4) financial records; and (5) intercepted phone calls.

Third, the defendant's history and characteristics weigh heavily in favor of detention and show the seriousness of danger posed by the defendant were he to be released. In addition to his use of violence against sex trafficking victims in the instant case, the defendant has a history of a felony prostitution conviction that involved violence against women.

In sum, the defendant before this Court today cannot overcome the presumption of detention and cannot be released without risking the safety of the community and the likelihood that he will not return to court as required. The defendant should, therefore, be detained.

## IV. Conclusion

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will properly assure the safety of the community or the defendant's return to court if the defendant is released on bail, and therefore requests that the Court order that the defendant be detained.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Erin Reid
Miranda Gonzalez
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (by ECF)
Counsel of Record (by ECF)